2021 IL App (1st) 201389-U

No. 1-20-1389

Order filed November 23, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DWAIN TONNE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2019 L 4856 |
| | ) | |
| TRF DISTRIBUTING, INC., d/b/a Roselle Ace | ) | The Honorable |
| Hardware, its agents and employees, | ) | Kathy M. Flanagan, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court properly granted summary judgment to defendant because plaintiff failed to show there was a dangerous condition in the utility mat that caused him to fall. Additionally, the court did not abuse its discretion in denying plaintiff leave to amend his complaint to add a spoliation of evidence claim since the amendment would not have cured his defective negligence claim. We affirm.

¶ 2    Plaintiff, Dwain Tonne, filed a premises liability action for injuries he sustained from

falling on a utility mat located near the entrance of a hardware store owned and operated by

defendant, TRF Distributing, Inc., d/b/a Roselle Ace Hardware.[1] The circuit court ultimately granted summary judgment to defendant, finding no evidence existed to show that the mat posed a dangerous condition prior to plaintiff's fall. The court also denied plaintiff leave to amend his complaint, which would have added a spoilation of evidence claim, because the destroyed evidence would not have established the causation needed to sustain his negligence claim against defendant. For the reasons that follow, we affirm.

¶ 3                                              BACKGROUND

¶ 4      The parties' pleadings, affidavits, depositions and other supporting documents revealed the following facts, which were presented to the court below.

¶ 5      In the morning on May 13, 2017, plaintiff, then 88 years old, arrived at Ace Hardware store ("Ace") in Roselle, Illinois, to purchase some flower baskets. Even though the store had just opened, it was already busy because Ace was holding its annual flower sale that day. Thus, in addition to Ace's regular outdoor section, there was a large outdoor tent set up near the store's entrance.

¶ 6      Plaintiff was shopping outside when he selected two hanging flower baskets, each measuring about a foot in diameter and weighing approximately three to four pounds. There were no shopping carts available, so plaintiff carried one basket in each hand as he walked inside the store to pay for them. Ace had two sets of non-automatic entrance doors which plaintiff managed to open, even though he was still carrying the flower baskets. The store owner, Antonio Fasano, noticed that plaintiff was "shuffling his feet" as he walked, but Antonio often observed this with his customers since their average age was 55 and over.

---

[1]We note that defendant's "agents and employees" were also named in the captions of plaintiff's complaint filed below and his appellate briefs, but the action was initiated against a singular party ("defendant").

¶ 7 As plaintiff was heading toward the cash register, however, he tripped and fell while walking across a utility mat with a rubber backing. Plaintiff fell forward onto his right side, injuring his hand, arm and shoulder. A customer inside the store who happened to be a nurse, comforted plaintiff while the store manager, Vincenzo Fasano (Antonio's son), called 911. According to plaintiff, the nurse said that a bunch or fold in the mat caused him to trip, even though he didn't "notice anything unusual" about the mat before he fell. Plaintiff later conceded, however, that he wasn't sure if the nurse personally witnessed his fall. In any event, she left when the police arrived and was never identified. Shortly thereafter, paramedics arrived and took plaintiff to the emergency room where he was diagnosed with a fractured shoulder.

¶ 8 After his fall, plaintiff filed the instant premises liability complaint, alleging that defendant's negligence in failing to remove the utility mat from the floor when it posed a dangerous condition, was the direct and proximate cause of his injuries.

¶ 9 In his deposition, plaintiff conceded that he never saw a bunch or fold in the utility mat before he fell, but claimed one had to be there "because otherwise, [he] wouldn't have tripped." Yet, Antonio testified that he inspected the mat shortly before plaintiff fell, and it was laying "completely flat" against the floor. Likewise, Vincenzo testified that the mat was "completely flat" when he opened the store that morning, and he never observed it in a "curled-up or folded-over condition" before plaintiff's fall. Although Ace had a surveillance camera at the time of plaintiff's accident, it was aimed at the cash registers, not the area where he fell. And in any event, the camera was destroyed, along with everything else inside the store, when a restaurant next door caught fire about two months after plaintiff's fall.

¶ 10 Defendant subsequently filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law because plaintiff did not present any admissible evidence

indicating there was a bunch or fold in the mat before he fell on it to support his negligence claim. Defendant further argued that, even if there was a dangerous condition in the mat, no evidence existed to prove that it had actual or constructive notice of such a condition before plaintiff fell, and therefore, he would never be able to recover under a premises liability theory.

¶ 11    While defendant's summary judgment motion was pending, plaintiff filed a motion for leave to amend his complaint, seeking to add a negligent spoilation of evidence claim regarding the store's surveillance video and utility mat that were destroyed in the fire (see *supra* ¶ 9). We note that plaintiff did not tender a copy of the proposed amendment to the circuit court, as will be addressed in more detail below.

¶ 12    In his motion, plaintiff claimed that defendant tried to "get rid of the evidence" (*i.e.*, the surveillance video and utility mat) before it was destroyed in the fire, alleging that an unidentified employee removed the mat immediately after he fell on it. Plaintiff, however, did not present any evidence other than his own testimony to support that claim. Consequently, the circuit court denied plaintiff's motion for leave to amend on September 8, 2020.

¶ 13    Plaintiff, thereafter, filed a response to defendant's summary judgment motion, attaching an affidavit from his safety expert, Russell Kendzior. Although Mr. Kendzior's affidavit stated that plaintiff had a valid cause of action, his conclusion was predicated on the existence of a fold or bunch in the utility mat prior to plaintiff's fall. In reply, defendant argued that it was not liable for plaintiff's injuries because he still had not established there was a dangerous condition in the mat that caused him to fall. The circuit court agreed, finding plaintiff's testimony regarding the mat and the nurse's alleged statements to him, consisted of speculative conclusions and inadmissible hearsay, which did not establish proximate cause.

¶ 14    The circuit court granted defendant's summary judgment motion on December 10, 2020, and plaintiff appealed.

¶ 15                                ANALYSIS

¶ 16    Summary judgment is appropriate when the pleadings, affidavits, depositions and admissions on file, construed strictly against the moving party, reveal no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. We review the circuit court's summary judgment ruling *de novo*. *Berke*, 2016 IL App (1st) 150397, ¶ 31. Additionally, we may affirm the lower court's grant of summary judgment on any basis appearing in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34.

¶ 17    To prevail on a negligence claim predicated on premises liability, the plaintiff must establish that the defendant owed him a duty of care, the defendant breached that duty, and that the breach proximately caused his injuries. *Berke*, 2016 IL App (1st) 150397, ¶ 32. Although the plaintiff is not required to prove his case at the summary judgment stage, he must nonetheless present some evidence that would arguably entitle him to judgment. *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 843 (2010).

¶ 18    In this case, the circuit court determined that no evidence of proximate cause existed to support plaintiff's claim that defendant was negligent. Plaintiff disagrees.

¶ 19    While proximate cause is generally a question of fact for the jury to decide, the lack of proximate cause may be determined by the court as a matter of law, where, as here, a party alleges facts that show he cannot establish causation. *Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004). In other words, a plaintiff who cannot establish proximate cause would never be able to

recover on his negligence claim, and the defendant, therefore, is entitled to judgment as a matter of law. *Berke*, 2016 IL App (1st) 150397, ¶ 32.

¶ 20    To establish proximate cause, the plaintiff must show that the defendant's alleged negligence was both the cause in fact and legal cause of his injuries. *Id*. ¶ 33. Cause in fact exists if the plaintiff's injuries would not have occurred "but for" the defendant's negligent conduct. *Id*. Legal cause, on the other hand, exists if the plaintiff's injuries were a reasonably foreseeable result of the defendant's negligent conduct. *Id*.

¶ 21    Causation may be established through circumstantial evidence that indicates the defendant's negligence likely produced the plaintiff's injuries, but causation cannot be based on a speculative conclusion or fact, whose existence is just as likely as its nonexistence. *Id*. ¶ 35. Simply put, the plaintiff must demonstrate with "reasonable certainty" that the defendant's negligent acts or omissions caused his injuries. *Id*. ¶ 34. After viewing the evidence in the light most favorable to plaintiff, as we must, we conclude that he fell demonstrably short of meeting that burden.

¶ 22    Here, there was no evidence presented to the circuit court of a bunch or fold in the utility mat prior to plaintiff's fall. The court was presented with evidence, however, that indicated the mat was in a safe condition before he fell on it. As set forth above, Antonio testified that when he inspected the mat right before plaintiff's fall, it was laying "completely flat" against the floor. Vincenzo also testified that the mat was "completely flat" against the ground when he opened the store that morning, and that he never saw it "curled-up or folded-over" before plaintiff's fall. Their observations were even supported by plaintiff's own testimony that he didn't "notice anything unusual" with the mat before he fell on it. *Cf. Caburnay v. Norwegian American Hospital*, 2011 IL App (1st) 101740, ¶ 32 (noting the plaintiff's testimony that he felt his shoe

catch a fold in the carpet before he fell). While plaintiff claims, as he did below, that he would not have fallen unless there was something wrong with the mat, this is based on nothing more than his own speculation.

¶ 23    Additionally, even if the utility mat was "curled up" after plaintiff fell on it, like he said, this does not establish it was in that condition prior to his fall. *Cf. Heider v. DJG Pizza, Inc.*, 2019 IL App (1st) 181173, ¶ 32 (nothing there was undisputed evidence that established the plaintiff slipped on a liquid substance near the entrance of the defendant's pizzeria). Moreover, it is important to note that plaintiff testified there was a curl in the mat that was "at least 2 inches" high. Plaintiff's testimony, taken as true, suggests it's unlikely the mat was in that condition before he fell on it since he saw the mat beforehand and didn't "notice anything unusual" with it.

¶ 24    Regardless, without any evidence indicating that the mat posed a dangerous condition before plaintiff's fall, we cannot say that defendant was negligent in failing to remove it from the premises, let alone that such negligence caused him to fall.

¶ 25     To the extent plaintiff asserts that the nurse's hearsay statements should have been admissible as excited utterances, it is unclear if she even witnessed plaintiff's fall or told him what caused it. It is well-settled that the excited utterance exception of the hearsay rule does not apply unless the declarant had an opportunity to personally observe the matter of which she speaks. *People v. Garner*, 2016 IL App (1st) 141583, ¶ 51.

¶ 26    Here, plaintiff sought to admit the nurse's alleged statements to him that the utility mat "was curled up," which is "what made [him] fall." Yet, plaintiff admitted in his deposition that he didn't know if she "witnessed [his] fall." Notwithstanding that admission, the nurse's purported testimony regarding what caused plaintiff's fall does not demonstrate that she

personally saw it. As stated, plaintiff testified that he saw a bunch or fold in the mat after his fall, so the nurse could have simply inferred the mat was in that condition before he fell on it.

¶ 27    Without any evidence that establishes the nurse personally observed plaintiff's fall, we cannot say the circuit court's ruling that the excited utterance exception did not apply was arbitrary or unreasonable. Accordingly, we find no abuse of discretion. See *People v. Robinson*, 379 Ill. App. 3d 679, 682 (2008) (noting that the lower court's evidentiary ruling will not be reversed absent an abuse of discretion).

¶ 28    Because we have determined there was insufficient evidence of a dangerous condition in the utility mat before plaintiff fell on it, we need not address the parties' arguments concerning whether defendant had notice of such a condition.

¶ 29    Next, plaintiff contends that the circuit court abused its discretion in denying him leave to amend his complaint, which would have added a spoilation of evidence claim. See *Rosen v. Larkin Center, Inc.*, 2012 IL App (2d) 120589, ¶ 24 (reviewing the lower court's decision denying leave to amend for an abuse of discretion).

¶ 30    Defendant, however, asserts that plaintiff failed to submit the proposed amendment to the circuit court, thereby forfeiting review of the issue. While plaintiff's failure to tender the proposed amendment significantly diminishes our ability to determine whether leave to amend should have been granted, his spoilation of evidence claim would not have provided a viable cause of action regardless, as will be discussed below. See *Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 138-39 (1996) (noting that a plaintiff's failure to include the proposed amendment and supporting facts in the record can be found to constitute a waiver of that party's right to have the denial of leave to amend reviewed by this court).

¶ 31    Illinois law employs four factors to evaluate whether the circuit court abused its discretion in denying leave to amend: (1) whether the proposed amendment would cure the defective pleading; (2) whether the other party would sustain prejudice by virtue of the proposed amendment; (3) whether the proposed amendment was timely; and (4) whether previous opportunities to amend the pleading could be identified. *Rosen v. Larkin Center, Inc.*, 2012 IL App (2d) 120589, ¶ 24. All four factors must be met. *Id.* Consequently, where, as here, it is clear that no cause of action can be stated after the amendment, thus failing the first factor, we need not proceed with further analysis. *Id.*

¶ 32    To state a claim for spoilation of evidence, the plaintiff must demonstrate that "but for" the defendant's loss or destruction of the evidence, he likely would have prevailed in the underlying suit. *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 471-72 (2006). Therefore, plaintiff here had to show that the loss of the store's surveillance video and utility mat caused him to be unable to prove that defendant was negligent.

¶ 33    Plaintiff did not, and cannot, meet this burden because even if the evidence hadn't been destroyed, it wouldn't establish proximate cause, which his negligence claim lacks. As stated, the surveillance video did not capture the condition of the utility mat before plaintiff's fall since it was aimed at the cash registers, not the area where he fell (see *supra* ¶ 9). And, even if the utility mat was removed, as plaintiff claimed, the mat wouldn't be in the same condition that it was in before he fell on it. We thus conclude that plaintiff's spoilation of evidence claim would not have cured his defective negligence claim against defendant because it would not establish that the mat's condition caused him to fall.

¶ 34    Accordingly, the circuit court did not abuse its discretion in denying plaintiff leave to amend his complaint to add that claim.

¶ 35                                    CONCLUSION

¶ 36    For the reasons set forth above, we affirm the circuit court's judgment.

¶ 37    Affirmed.